UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DuJuan Green, #106568, | ) | C/A No.: 4:11-2473-MGL-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SCDC Director Byrs; Warden McCall; | ) | Report and Recommendation |
| Assoc Warden Mauney; Assoc Warden Claytor; | ) | |
| Lt. Monroe; Lt. Byrd; | ) | |
| Lt. Golden; Lt. C. Williams; | ) | |
| Lt. McCauley; Major Bush; | ) | |
| C/O Tucker; Sgt. Pay; | ) | |
| Lt. Harold; Nurse Gene; | ) | |
| Nurse Enloe; and Mr. Turner, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  PROCEDURAL BACKGROUND

The Plaintiff, DuJuan Green, filed this action under 42 U.S.C. § 1983[1] on September 16,

2011, alleging violations of his constitutional rights. Plaintiff is housed at Perry Correctional

Institution ("PCI"). Defendants filed a second amended motion for summary judgment on April 19,

2012, along with a memorandum, exhibits, and affidavits supporting the motion. (Doc. # 71).

Because the plaintiff is proceeding pro se, he was advised on or about April 19, 2012, pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants'

motion for summary judgment could result in the dismissal of his complaint.  (Doc. # 62).  The

_____

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this
is a dispositive motion, the report and recommendation is entered for review by the District Judge.

Plaintiff filed a response on June 25, 2012. (Doc. #92). The Defendants filed a reply to the response on June 26, 2012. (Doc. #94).

## II.  STANDARD FOR SUMMARY JUDGMENT

As previously stated, the defendants filed a motion for summary judgment.  A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See* Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986). The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other

facts become immaterial because there can be "no genuine issue of material fact." In *Celotex*, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### III.  DISCUSSION

The Plaintiff has alleged numerous claims against some of the Defendants, including claims of excessive force, deliberate indifference to medical needs, and claims relating to his conditions of confinement and disciplinary hearing. Plaintiff seeks monetary damages, to be transferred to a safe prison within the SCDC, and for the court to sanction the involved parties and have them "released as employees of the State of South Carolina."

### A. Exhaustion of Administrative Remedies

The Defendants have asserted the affirmative defense of failure to comply with the Prison Litigation Reform Act's ("PLRA's") exhaustion requirement only with regard to Plaintiff's claims of medical indifference.

The PLRA requires that a prisoner exhaust the available administrative remedies before filing a § 1983 action concerning conditions of his confinement. 42 U.S.C. § 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended §1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." *Id.* Accordingly, before the plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) (holding exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) (holding exhaustion required even though plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) (applying Booth to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81 (2006).

Defendants submitted the affidavit of Ann Hallman who attests that she is employed by the SCDC as the Branch Chief for the Inmate Grievance Branch, and she supervises the grievance system. (Hallman affidavit, Doc. #61-3). Hallman attests that the initial step for the SCDC Inmate Grievance System if for the inmate to file a Step One Grievance. Id. The general procedure is a Grievance Coordinator will conduct an investigation and a decision will be issued by the Warden at the institution where the inmate is housed. Id. If the inmate disagrees with the Warden's decision on the Step One Grievance, the inmate may file a Step Two Grievance which is the second part of the administrative remedies available to inmates in SCDC. Id. If the inmate disagrees with the disposition of the Step Two Grievance, the inmate may appeal to the Administrative Law Court. Id. Hallman attests that while Plaintiff filed several grievances concerning the incident of July 18, 2011,

4

including appealing his disciplinary conviction for Striking an Employee, he never stated that he did not receive proper medical care in relation to the alleged incident of which he now complains. Id. Therefore, Hallman attests that Plaintiff has not exhausted the SCDC grievance process as to the issue of medical indifference. Id.[2]

As Plaintiff did not file a Step One and Step Two grievance with relation to the allegations pertaining to improper or inadequate medical care, the issue has not been exhausted and should be dismissed and Defendants' motion for summary judgment granted.

In the alternative, even if Plaintiff had exhausted his medical indifference claims, he has failed to show that a constitutional violation occurred. The Court of Appeals for the Fourth Circuit has considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle v. Gamble, 429 U.S. 97 (1976); Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

---

[2] In his complaint, Plaintiff asserts that he sent numerous "Inmate Requests to Staff" but they failed to respond or assist him. Plaintiff stated that he "filed grievance about such issues on 8-1-11 and have failed to receive any response at this time." (Complaint, p. 5). Plaintiff filed this action on September 16, 2011. Therefore, even assuming Plaintiff filed a Step One grievance on August 1, 2011, as asserted in the complaint, there would not have been time for there to be a response and for Plaintiff to file a Step Two grievance and receive a response as necessary before Plaintiff filed this action.

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff admits that he was seen by the nurse after the use of force incident on July 18, 2011. Defendants submitted the affidavits of Nurse Practitioner Amy Enloe and Nurse Sherry Ging along with Plaintiff's medical records. Nurse Ging attests that she examined the Plaintiff on July 18, 2011, who

6

complained of pain on the shin of his lower leg, and noted a "silver dollar sized area that was raised approximately 1/4 inch" but the skin was intact and Plaintiff was issued an Ibuprofen pill pack and instructed to elevate his legs. (Ging affidavit). Plaintiff was seen by the Nurse on August 2, 2011, for complaints of ankle pain which he attributed to an incident that occurred on July 18, 2011. (Enloe affidavit). It was noted by the Nurse after examining Plaintiff that his skin was warm, clean, and dry, and Plaintiff's gait was slow and steady with no swelling noted. (Id.). Plaintiff was issued a pill pack of Ibuprofen. (Id.). Nurse Practitioner Enloe saw Plaintiff for continued complaints of ankle pain on August 30, 2011. (Id.). Although Nurse Enloe saw no swelling upon examination, she scheduled x-rays of his feet and ankles due to his complaints. (Id.). Plaintiff had X-rays on September 8, 2011, with the right ankle and foot being normal, and the left ankle and foot showing no evidence of fracture only mild soft tissue swelling of the left ankle .(Id.). Enloe attests that based on her review of the x-rays no further treatment was necessary. (Id.). Plaintiff was seen on October 27, 2011, with complaints of right leg pain but stated that it had started two days prior.(Id.). Enloe did not observe any injury to Plaintiff's ankles or feet when she examined him and x-rays did not show any indication of a fracture or other abnormality which required treatment. Based on the medical records, it also appears Plaintiff was seen in the mental health clinic after complaining of flashbacks from the alleged incident.

Plaintiff has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by these Defendants "shocks the conscious" as required by Miltier v. Beorn, supra. Any disagreement between an inmate and medical personnel generally fails to state a claim. Therefore, any claims of medical indifference should be dismissed.

Additionally, as to non-medical Defendants, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, supra. Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against non-medical personnel.

**B.  Supervisory Liability**

The Plaintiff alleges claims against Defendants Byers, McCall, Claytor, Bush and Mauney based solely on their supervisory capacities.  However, the Plaintiff does not  allege any facts showing how any of these Defendants were personally involved in any constitutional violations. Mr. Byers is the Director for SCDC and his office is located in Columbia, S.C. Mr. McCall is the Warden at PCI and is charged with the overall supervisory responsibility at the institution. Ms. Mauney and Mr. Claytor are Associate Wardens at PCI, and Mr. Bush is a Major at PCI having broad supervisory responsibilities at the institution. (See affidavits of Byers, McCall, Claytor, Mauney, and Bush).  The only claims Plaintiff appears to attempt to make against the defendants are that he sent "Inmate Request to Staff" to them attempting to have them look into the allegations but that they failed to respond. Plaintiff asserts in his complaint that he filed a grievance on August 1, 2011, but failed to receive any response as of the date of the filing of his complaint on September

16, 2011.[3] Plaintiff does not make any other allegations against Defendants Byers, McCall, Claytor, Bush and Mauney.

The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity.  *See* <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009).   Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization.  <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984).

The Plaintiff has not alleged that Defendants Byers, McCall, Claytor, Mauney, and Bush were personally responsible for any of the incidents or acted in any way other than in a supervisory role.  Plaintiff generally alleges that these Defendants were aware that various actions had occurred but fails to show any specifics of any awareness of these Defendants regarding the alleged constitutional violations.   Plaintiff has failed to show that these Defendants had actual or constructive knowledge that there was an unreasonable or pervasive risk of constitutional injury to the Plaintiff and that these Defendants acted with deliberate indifference. Further, the Plaintiff has not shown that these Defendants were deliberately indifferent to, or tacitly authorized, any of the

---

[3] Any allegations alleging Defendants Byers, McCall, Claytor, Bush, and Mauney did not handle his grievances correctly should be dismissed. It is recommended that these allegations be dismissed as there is no constitutional right to participate in grievance proceedings. <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994).

alleged actions or inactions of the other Defendants. Thus, the Plaintiff fails to show that Defendants

Byers, McCall, Claytor, Mauney, and Bush are liable on a theory of respondeat superior or

supervisory liability.

## C. Excessive Force

Plaintiff makes claims of excessive force in his complaint. Specifically, Plaintiff alleges as

follows:

> During a shakedown in Unit O2-side, by Lt. Golden, Dt. Monroe and several other
> c/o's on 7/18/11, the following incident occurred. I asked Lt. Monroe why he was
> staring at me the way he was, he stated that if I've got a problem with it I need to
> look the other way. I stated he can look the other way. Lt. Monroe immediately
> stopped what he was doing and aggressively approached me, telling me to place my
> hands behind my back, which I attempted to comply, when an unknown officer
> grabbed my right wrist and applied serious pressure that caused me to jerk my arm
> back. I was then slammed on the floor in a very aggressive manner by the unknown
> officer and Lt. Monroe. I was then picked/lifted form the floor and escorted out of
> the unit by Lt. Golden.

> Lt. Byrd and Lt. Williams approached us upon leaving the unit and stated they will
> escort me up from (meaning the holding cell). I attempted to explain the incident to
> them, but Lt. Byrd stated he don't want to hear it. Lt. Williams stated that it would
> have been wise if I had complied and stayed in the unit. I asked him what that was
> suppose to mean? He stated this, and he alon[g] with Lt. Byrd threw me to the
> ground on my face and Lt. Williams began to knee me in the back of my head several
> times, then placed leg shackles on me. They then both lifted me from the ground and
> pushed my arms in an upward position, forcing me to bend forward where my
> forehead is force to my knees. They attempted to make me walk like this and I
> begged them to please let go of my arms, so I can walk normal, but they refused and
> forced me to walk like this. I stopped walking, because I couldn't walk in such
> position as they attempted to force me to do. They often dragged me by the hand
> cuffs and my shirt, forcing my legs to drag upon concreat[sic] with leg shackles on
> the, I was dragged at least 100 yards or better like this, from in front of the
> commissary/canteen building all the way to C-dorm, to cell C-Y-1. I was threw in
> the floor of cell C-Y-1 by Lt. Williams and Lt. Byrd. Lt. Williams once again began
> to knee me in the back of my head, he then held me down while Lt. Byrd cut my
> uniform off with scissors including my boxers, until I was completely naked laying
> on the floor.

> Lt. Williams held me down naked on the floor, while Sgt. Pay and c/o Tucker took the shackles off my legs. During this time Lt. Byrd was holding me down by placing his hand's on my right butt cheek gently, while lifting me up he slid his fingers across my anus and smiled at me, while he squeezed my butt cheek and helped Sgt. Pay and c/o Tucker drag me towards the cell door, where they finally took the handcuffs off of me.

(Complaint).

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, --- U.S. ----, ----, 130 S.Ct. 1175, 1179, 175 L.Ed.2d 995 (2010). The Eighth Amendment analysis requires inquiry at to whether a prison official "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, supra.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. (Id.) (internal quotation marks omitted). The objective component is not as demanding because "[when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidence." Wilkins v. Gaddy, — U.S. ----, ----, 130 S.Ct. 1175, 1178, 175 Led.2d 995 (2010) (internal quotation marks omitted).

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. at 322. In Whitley, the Supreme Court identified the following four factors to consider when determining whether a prison official's actions were carried out

"maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321 (1986). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 130 S.Ct. 1175, 1178. See also Hudson v. McMillan, 503 U.S. 1, 7, 112 S.Ct. 995 , 117 L.Ed.2d 156 (1992).[4]

Here, the Plaintiff's allegations do not support a claim of excessive force. The officers placed Plaintiff in handcuffs and shackles due to his agitated state, refusing to walk, verbal abuse, and his demeanor toward them due to fear for their safety. (Affidavits discussed above). Additionally, the Plaintiff alleges he was kneed and has experienced swelling in his ankles and wrists due to "being dragged in shackles and handcuffs" but has not alleged or shown that he received a serious injury. (Complaint, p. 4). The Plaintiff's injuries were nothing more than de minimis. Furthermore, the officers were merely trying to regain control of the situation and escort Plaintiff to SMU. Justice v. Dennis, 834 F.2d 380, 382 (4th Cir.1987)(holding the court must recognize that "agents of the state

---

[4] While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins , 130 S.Ct. at 1178. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 130 S.Ct. at 1178. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

are permitted to exercise a certain degree of force in order to protect the interests of society.").  The court "must accord due deference to an officer's efforts to restrain [an inmate] when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" Scarbro v. New Hanover County, 374 F. App'x 366, 370 (4th Cir.2010) (unpublished) (quoting Grayson v. Peed, 195 F.3d 692, 697 (4th Cir.1999)).  Thus, the allegations are not sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive force was used against the plaintiff in this instance. Accordingly, the Plaintiff has failed to state an excessive force claim.[5]


**D. Conditions of Confinement**

Plaintiff alleges in his complaint that he was placed in a cell in SMU without any clothes, mattress, blanket, or toilet paper and was given Nutriloaf for "72 hours."

Defendants submitted the affidavit of Lt. Harouff who attests that he requested Plaintiff be placed on Nutriloaf because he had been disruptive while they were attempting to feed other inmates. Plaintiff engaged in disruptive behavior and disrupted the feeding process so he was placed on Nutriloaf. (Affidavit of Lt. Harouff, Doc. #61-5).

---

[5] As to Plaintiff's allegations that on one occasion Lt. Byrd touched him about his butt fails to support a claim for constitutional violation. Plaintiff does not assert that he was injured in any way from the alleged touch except for emotional injuries. See McCoy v. Bazzle, No. 08–2930, 2009 WL 3169963, at *4 (D.S.C. Sept.28, 2009) [Prison captain allegedly touching inmate on his buttock when he was going back to his cell, absent any showing of physical injury, failed to establish facts sufficient to support a claim for violation of the Eighth Amendment]; Calhoun v. Vicari, 05–4167, 2005 WL 2372870, at * 5 (D.N.J.Sept.26, 2005) [Holding that sexual gestures, jokes, and slap on the buttock not sufficiently serious to satisfy the objective component of an Eighth Amendment].

Defendants also submitted the affidavits of Charles Williams, Captain at PCI, Wade Byrd, Lieutenant at PCI, Michael Tucker, Officer at PCI, and Travis Peay, Sargent at PCI who all attest that Plaintiff was verbally abusive and uncooperative during the time they were attempting to escort Plaintiff to SMU. (See affidavits of Williams, Byrd, Tucker, and Peay). Therefore, a retrieval chain was secured on Plaintiff, but he still attempted an aggressive act toward Lt. Harouff. (Id.). All inmates must be strip-searched when entering SMU and inmates in SMU cannot wear uniforms worn by inmates in the general population. (Id.). As Plaintiff was still highly agitated and uncooperative, the officers had to cut off his uniform because it could not be removed in any other manner while he was in restraints. (Id.). Due to Plaintiff's agitated state, the officers did not want to risk removing his restraints which would create a dangerous situation whereby an agitated inmate with one handcuff removed could use the remaining handcuff as a weapon to cause injury to the officers. (Id.). Therefore, Plaintiff's uniform was cut off, the retrieval chain was placed through the flap in the cell door, and the officers exited and secured the cell. (Id.). Plaintiff's restraints were removed while maintaining control by use of the retrieval chains. (Id.). Plaintiff was placed in the control cell where an inmate is not allowed to have a jumpsuit or other property, but can only have a suicide blanket and boxers. (Id.). Peay attests that Plaintiff did not have on any boxers when they cut off his jumpsuit but would have been provided his boxers once this property had been searched and brought to SMU.[6] (Id.). They also recall Plaintiff was placed on Nutriloaf because of his actions disrupting mealtime while officers were attempting to feed the other inmates. (Id.).

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively, prison

---

[6] In his reply, Plaintiff asserts that he did not receive his boxers or blanket. (Doc. # 92).

officials acted with a sufficiently culpable state of mind to expose him to those conditions. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993). Only extreme deprivations are adequate to satisfy the object component of an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, Strickler, 989 F.2d at 1380-81, or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. Helling v. McKinney, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and unusual is to examine the effect on the prisoner. See Rhodes v. Chapman, 452 U.S. 337, 364 (1981).

Prisoners have a right only to adequate food. It need not be either tasty or even appetizing. See Williams v. Berge, 102 Fed. Appx. 506 (7th Cir. 2004) (serving moldy raisins and rancid peanut butter). Smaller portions or a failure to provide a special diet cannot satisfy the first element of a retaliation claim unless such provisions either prove inadequate or rise to the level of cruel and unusual punishment in violation of the Eight Amendment. See Henderson v. Commonwealth of Va., 2008 WL 204480 at *4 (W.D.Va. January 23, 2008.)

The Plaintiff has produced no evidence that the Nutriloaf which he was served was so inadequate that it constituted cruel and unusual punishment. However, as stated above, even if the Plaintiff could establish the first element of his claim, he has not produced any evidence of an actual injury or more than de minimus injury by being placed in the control cell within SMU or given Nutriloaf. Additionally, no liberty interest is created in custodial classifications. Meachum v. Fano, 427 U.S. 215, 225 (1976).

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials. Accordingly, the Defendants should be granted summary judgment on this claim.


**E. Disciplinary Conviction**

Plaintiff alleges that he was improperly found guilty of the disciplinary offense of Striking an SCDC Employee as a result of the incident that occurred on July 18, 2011.

Defendants submitted the affidavit of Richard Turner who attests that he is a disciplinary Hearing Officer for SCDC and works at several institutions including Perry Correctional Institution. (Turner affidavit). Turner sets out in detail the procedures he follows for disciplinary hearings. Id. Plaintiff was charged with Striking an SCDC Employee as result of an incident which occurred on July 18, 2011. (Id.). The matter was scheduled for disciplinary hearing on July 26, 2011. Id. Turner

16

attests that he has little specific recollection of the hearing, but has reviewed reports and listened to the disciplinary hearing tape. Id. The Plaintiff appeared at the hearing as did the charging officer, Lt. Monroe. Id.. Based on the evidence presented, Turner found the Plaintiff guilty of Striking an SCDC Employee. Id. Turner's decision was based on the testimony of Lt. Monroe along with his Incident Report and Incident Reports from several additional officers. Id.. Turner asserts that based on the evidence presented to him, Plaintiff was properly found guilty of this charge. Id.. Turner attests that as of the present time, the disciplinary conviction has not been overturned, expunged, or reversed in any way. Id..

Plaintiff's claim alleging a problem with his disciplinary proceedings is subject to summary dismissal. In Heck v. Humphrey, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the United States Supreme Court held that a state prisoner's claim for damages is not cognizable under § 1983 where success of the action would implicitly question the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that the conviction or sentence has been previously invalidated. This ruling was subsequently extended to a prisoner's claim for damages regarding loss of good time credits in Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983."); see also Bryan v. SCDC, Civil Action No. 3:08–cv–846–RBH, 2009 WL 3166632 at *5 (D.S.C. Sept.29, 2009) (noting that a § 1983 claim for injunctive relief related to a disciplinary hearing is also barred by Heck where a judgment in the plaintiff's favor would imply the invalidity of the disciplinary proceedings) (citation omitted)).

Accordingly, it is recommended that Defendants' motion for summary judgment be granted with respect to this issue.

## F.  Qualified Immunity

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at

18

> the level of its application to the specific conduct being challenged."
> Moreover, "the manner in which this [clearly established] right
> applies to the actions of the official must also be apparent." As such,
> if there is a "legitimate question" as to whether an official's conduct
> constitutes a constitutional violation, the official is entitled to
> qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly

established constitutional or statutory rights. However, even if there was a violation, Defendants are

entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be

granted as to these Defendants.


**G.  Eleventh Amendment Immunity**

The Defendants contend that the Plaintiff's §1983 claims against them for money damages

in their official capacity are barred pursuant to Eleventh Amendment Immunity. Defendants also

argue that the action against them should be dismissed as a matter of law to the extent that they are

sued in their official capacity because while acting in their official capacity as an employee of the

SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one

against the state, the real party in interest. If review of the pleadings indicates that the state is, in

fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh

Amendment of the United States Constitution. Although declaratory and/or injunctive relief may

be granted, damages may not be awarded against the state.

19

In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. <u>Will</u>, <u>supra</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

## H. Pendent Jurisdiction

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want

of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §

1367(c).[7]

### III.  CONCLUSION

The Plaintiff has failed to show that the Defendants violated any of his constitutional or

statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by the Defendants (document #71) for summary

judgment be GRANTED IN ITS ENTIRETY and this action dismissed as to all Defendants.[8]

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.


Respectfully Submitted,


s/Thomas E. Rogers, III
January 7, 2013                                        Thomas E. Rogers, III
Florence, south Carolina                      United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**

---

[7] Any claims by Plaintiff for injunctive relief should be denied. The issuance of an injunction as requested by the Petitioner would undermine prison officials' ability to effectively manage prisons and maintain order and discipline. Cf. Taylor v. Freeman, 34 F.3d 266, 269-270 (4th Cir. 1994) (holding preliminary injunctive relief involving the management of prisons should be granted only under exceptional and compelling circumstances). The public interest weighs in favor of policies which encourage security in prisons.  Nicholas v. Ozmint, No. 05-3472, 2006 WL 2711852, * 5 (D.S.C.Sept.20, 2006).  The court must give deference to decisions by prison administrators. See Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir.1980).  See also McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise").

[8] Defendants argue that named Defendants Harold and Doe have not been served with a copy of the summons and complaint such that the court lacks jurisdiction over these Defendants. A review of the docket sheet in this matter reveals that the summons issued for Defendant Lt. Harold was returned unexecuted with remarks that "unable to serve. SCDC Perry Staff had no knowledge of the above defendant."  (Doc. # 51). Further, Defendant "Doe" was never identified. Therefore, it is recommended that Defendants Harold and Doe be dismissed for lack of jurisdiction.

21